FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

00 MAR 30 AM 9: 1

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GARY R. CUNNINGHAM and DELORES CUNNINGHAM, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CV 99-PT-2605-E ) ) |
| FLEETWOOD HOMES OF GEORGIA, RONNIE SMITH HOME CENTER, INC., | ) ) ) ) |
| Defendants. | ) ) |

ENTERED
MAR 30 2000

### MEMORANDUM OPINION

This cause comes to be heard on defendant Ronnie Smith Home Center, Inc.'s ("Ronnie Smith's Home Center") motion to compel arbitration and to stay proceedings, or alternatively, motion to dismiss, filed January 14, 2000, joined by defendant Fleetwood Homes of Georgia, Inc. ("Fleetwood") on January 18, 2000 (collectively as "defendants").

### BACKGROUND

Plaintiffs Gary and Delores Cunningham ("plaintiffs" or the "Cunninghams") purchased a new 1998 Fleetwood mobile home from the defendant, Ronnie Smith's Home Center, on April 30, 1998. Soon after purchasing the mobile home, plaintiffs allegedly discovered numerous defects with it. Plaintiffs notified defendants of their problems, but were not satisfied with the defendants' response.

Plaintiffs filed their complaint on August 27, 1999 in the Circuit Court of Calhoun

1



County, Alabama, alleging fraud, mental anguish and emotional distress, fraud in the inducement, negligence and wantonness, breach of contract, breach of express and implied warranties, breach of implied warranty of merchantability, Alabama Extended Manufacturer's Liability Doctrine, and the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the "Magnuson-Moss Act" or the "Act").

An Agreement for Binding Arbitration (the "Agreement") was entered into between the Cunninghams and Ronnie Smith's Home Center as part of the sales transaction. The Agreement states in full:

> This agreement for binding arbitration is this date entered between <u>Gary R. Cunningham and Delores Cunningham</u> hereinafter called "Buyer" and <u>Ronnie Smith's Home Center Mobile Home Center</u>, a corporation, hereinafter called "Seller."
>
> Buyer has this date purchased from Seller a mobile home described as follows: <u>1998 Fleetwood</u> Serial Number: <u>GAFLW34 27656-SH11</u>. As a part of this consideration for the sale of said mobile home, Buyer and Seller hereby enter into this agreement for binding arbitration, each intended to be mutually bound by the terms of this agreement.
>
> Buyer and Seller acknowledge that the said mobile home is a product manufactured and sold in interstate commerce and that the provisions of the Federal Arbitration Act are applicable to this contract. The parties further acknowledge that the sale of the said mobile home is a transaction involving interstate commerce.
>
> Buyer and Seller agree, covenant and consent that any controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of covenant, warranty, misrepresentation, rescission, any breach of contract, or other tort shall be settled solely by arbitration in accordance with the applicable Rules of the American Arbitration Association then in effect, and that judgment upon award rendered by the arbitrators may be entered in and enforceable by any court of competent jurisdiction. Buyer and Seller further agree that they shall submit any and all disputes, controversies and cases arising out of the negotiations for the sale and service of the mobile home, whether in the nature of contract, warranty or tort, to

the decision of a three-person arbitration panel. Buyer and Seller agree that they shall be bound by the determination of the said arbitration panel. The arbitration panel shall be appointed by the applicable national panel of arbitrators in accordance with the American Arbitration Association's rules for appointment of such panels. In accordance with the American Arbitration Association, the Buyer and Seller agree that all and any arbitration proceedings arising hereunder shall be held in the county of sale, which is <u>Calhoun</u> County.

Buyer and Seller agree that this agreement shall cover any and all disputes, claims or controversies between them, including but not limited to warranty claims, service or repairs disputes, set-up or installation disputes, breach of contract, misrepresentation claims, rescission or revocation, loss of use, claims involving fitness for a particular purpose of merchantability, and all other claims arising out of or any way related to the sale and service of the said mobile home.

It is further agreed by the parties that all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer of the said mobile home insofar as any claims may exist or thereafter arise against the manufacturer, including but not limited to, enforcement of warranties, whether express or implied. It is further acknowledged, agreed and stipulated to by the parties hereto that each of them acknowledge the benefit of including any and all claims which might be asserted against the said manufacturer in relation hereto in any arbitration proceeding contemplated hereby and, as such, each part shall, for purposes of judicial economy, decreased expenses and justice expressly acquiesce in and bout to settle such claims against the manufacturer by arbitration.

The agreement is part of the contract of sale this date entered into this date between Buyer and Seller, the terms and provisions of which are incorporated herein by reference, and shall be binding upon and inure to the benefit of their respective heirs and assigns.

The Retail Installment Contract and Security Agreement (also a part of the Agreement)[1]

entered into by the Cunninghams and Ronnie Smith's Home Center states in pertinent part (in all

capital letters):

---

[1] See <u>Crown Pontiac, Inc. v. McCarrell</u>, 695 So.2d 615, 617-618 (Ala. 1997) (well settled contract principle that "two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract.")

3

14. ARBITRATION: All disputes, claims or controversies arising from or relating to this contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. section 1. Judgment upon the award rendered by be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. The parties voluntarily and knowingly waive any right they have to a jury trial either pursuant to arbitration under this clause or pursuant to a court action by you (as provided herein). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These power shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief, notwithstanding anything hereunto the contrary. You retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the manufacture home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the manufactured home or to foreclose on the manufactured home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

15. WAIVER OF JURY TRIAL: I hereby waive any right to a trial by jury that I have in any subsequent litigation between me and the seller, or me and any assignee of the seller, where such litigation arises out of, is related to, or is in connection with any provision of this contract whether the contract is asserted as the basis for a claim, counterclaim or crossclaim, or a defense to a claim, counterclaim or crossclaim.

...

My signature below acknowledges I understand paragraphs 14 and 15 above require binding arbitration and waive my right to a jury trial if a dispute arises under this contract.

...

[signature line]

## DISCUSSION

### A. Fleetwood's Ability to Compel Arbitration

Plaintiffs contend that Fleetwood may not compel arbitration because it is not a signatory to the Agreement. Plaintiffs argue that the purpose of a signature is to show that the parties mutually agree to be bound by the contract, citing <u>Lawler Mobile Homes, Inc. v. Tarver</u>, 492 So.2d 297 (Ala. 1986). Plaintiffs further assert that a lack of mutuality and assent is evidenced by no signature line for the non-signatory at issue, citing <u>Crown Pontiac, Inc. v. McCarrell</u>, 695 So.2d 615 (Ala. 1997). Plaintiffs argue the bright-line rule that non-signatories to an arbitration agreement simply cannot compel arbitration, citing <u>Ex parte Jones</u>, 686 So.2d 1166 (Ala. 1996); and <u>Ex parte Martin</u>, 703 So.2d 883 (Ala. 1996). Thus, plaintiffs assert, Fleetwood, as a non-signatory to the Agreement, should not be allowed to compel arbitration in this case because the Agreement specifically and exclusively refers only to the Buyer and Seller, relying on <u>Boyd v. Homes of Legend, Inc.</u>, 981 F. Supp. 1423 (M.D. Ala. 1997).

Fleetwood asserts that the Agreement entered into by the Cunninghams and Ronnie Smith's Home Center is broad and its plain language includes it as a third party beneficiary, therefore allowing it to compel arbitration. Interestingly, Fleetwood quotes from an alleged section of the Agreement which this court can find nowhere in the documents submitted to it. Fleetwood argues that <u>Boyd</u> is distinguishable because the arbitration agreement in that case did not mention the manufacturer of the home in any respect. Fleetwood also notes that the Alabama Supreme Court has upheld a non-signatory's right to compel arbitration in certain situations, citing <u>Ex parte Napier</u>, 723 So.2d 49 (Ala. 1998); and <u>Ex parte Gates</u>, 675 So.2d 371 (Ala.

5

1996).² Thus, because the Agreement's language is expansive and specifically gives third-party benefits to it as the manufacturer, Fleetwood argues it may compel arbitration of plaintiffs' claims against it.

In Ex parte Jones, 686 So.2d 1166, the Alabama Supreme Court considered whether the trial court properly compelled arbitration as between the buyers, the Joneses, and First Colonial, the insurer of the vehicle. The loan contract between the Joneses and Money Tree, the lender, included an arbitration clause limited to disputes between the creditor (Money Tree) and the debtors (the Joneses), but the contract issued by First Colonial did not contain an arbitration clause. The Court concluded that, because "one must be a signatory to a contract in order to be bound by the contract", and because First Colonial was not a signatory to the contract which provided for arbitration, the trial court erred in compelling arbitration between the Joneses and First Colonial. Id. at 1168.³

In Ex parte Martin, 703 So.2d 883, the Alabama Supreme Court considered whether the trial court erred when it compelled arbitration between the plaintiffs, buyers of a mobile home,

---

² In Ex parte Isbell, the Alabama Supreme Court clarified its holding in Gates, stating that Gates may not be relied on for the proposition that a non-signatory may compel arbitration based upon the contract executed by the buyers and sellers of a mobile home, because that issue was not actually considered by the trial court in Gates. 708 So.2d 571, 575 (Ala. 1997) ("[T]his Court in Gates merely applied the well-established rule that it 'will not reverse a trial court's judgment on a ground raised for the first time on appeal.'"). The Court in Isbell held that the arbitration clause which provided that "[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract ... shall be resolved by binding arbitration," was insufficiently broad for a non-signatory to compel arbitration. Id. at 581 (emphasis added).

³ This case does not appear to be on point, as it deals with a contract between two parties which simply does not have an arbitration clause.

6

and one of the defendants, the manufacturer of the mobile home. The Court noted the specific language of the arbitration agreement in that case, which named only two parties, was signed only by the buyers and seller of the mobile home, plus two witnesses, and repeatedly referred to "two parties," "both parties," or "either party," indicating an intent to bind only the buyer and seller to the arbitration agreement. Id. at 885. Based on the plain language of the arbitration agreement, though conscientious of the federal policy favoring enforcement of arbitration agreements, the Court held that the trial court erred in compelling arbitration between the buyer and the manufacturer where the manufacturer "was not within the scope of the arbitration agreement." Id. at 887.

In Ex parte Gates, 675 So.2d 371, the Alabama Supreme Court considered whether the trial court erred in compelling arbitration between the plaintiffs, buyers of a mobile home, and the two defendants, the seller of the mobile home and the manufacturer of the mobile home. The plaintiffs' complaint alleged breach of express and implied warranties, fraud, negligent or wanton installation, and violation of the Magnuson-Moss Act. The Court recognized that the intent of the parties as manifested in the words of a contract is a key guide to contract interpretation. The Court then noted that the arbitration agreement was very broad, providing that "[a]ll disputes, claims, or controversies arising from or relating to this Contract <u>or the relationships which result from this Contract</u> ... shall be resolved by binding arbitration." (Emphasis added). Based on this, coupled with the Court's conclusion that the FAA applied, the Court held that the trial court did not err in compelling arbitration of the plaintiffs' claims.[4]

---

[4] But see n.3, supra.

7

In Ex parte Napier, 723 So.2d 49, the Alabama Supreme Court considered whether the trial court erred in compelling arbitration between the buyers of a mobile home and two defendant non-signatories to the arbitration agreement, the insurance company and its agent. The Court first found that the arbitration agreement at issue was sufficiently broad to include the plaintiffs' claims against the two defendant non-signatories, as it called for the binding resolution of "[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract...." (Emphasis added). The Court then found that the plaintiffs' claims "against the signatory defendants and those against the nonsignatory defendants are sufficiently intertwined that all claims must be arbitrated." Id. at 53. This conclusion was based in part on the plaintiffs' claim of conspiracy against all four named defendants. The Court concluded that the trial court did not abuse its discretion in compelling the plaintiffs to arbitrate their claims against the two defendant non-signatories.

In Boyd v. Homes of Legend, 981 F. Supp. 1423, Chief District Court Judge Myron H. Thompson of the Middle District of Alabama considered whether a defendant mobile home manufacturer which was a non-signatory to the purchase contracts which contained an arbitration clause could compel arbitration of plaintiff's claims against it. The court noted that "[i]t is a cardinal principle of federal arbitration law that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 1428 (internal quotations omitted) (quoting AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582 (1960)). Based on this, the court saw its task as to determine whether the parties at issue, the plaintiff and the non-signatory defendant, agreed to arbitrate. To

8

make this determination, the court recognized that it "should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration." Id. at 1429 (citing Volt Info Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ., 489 U.S. 468, 475-76 (1989)). The court then stated the following:

> It is almost axiomatic, as a first rule of state common law governing the formulation of contracts, that parties must manifest assent to a bargain in order to be bound under it.... Beyond that, also as a general matter, one who is not a party to a contract has no standing to compel arbitration. But there are important exceptions to these general propositions and statements.
>
> One such exception arises when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract. However, the party claiming to be a third-party beneficiary of a contract bears the burden of establishing that the contracting parties intended to bestow a benefit upon it.

Id. (internal citations and quotation marks omitted).

The court concluded that the non-signatory manufacturer failed to satisfy this burden as the purchase contracts containing the arbitration agreement made no reference to it in any way. Rather, the agreement stated that "[a]ll disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration...." Because the defendant non-signatory was not a party contemplated by the signatories when they agreed to the arbitration clause, it could not compel arbitration as a third-party beneficiary.

In a very similar case decided by the same court, Wilson v. Waverlee Homes, Inc., 954 F. Supp. 1530 (M.D. Ala. 1997), Chief Judge Thompson considered whether a defendant mobile home manufacturer who was a non-signatory to the purchase contracts which contained an arbitration clause could compel arbitration of plaintiff's warranty claims against it. Based upon

identical reasoning as stated above, the court noted that the non-signatory defendant was mentioned in no way in the documents at issue. Based on this, the court concluded that the plaintiffs "at no time and in no way agreed with ... [the seller] to extend such a third-party benefit to [the manufacturer]." Id. at 1534.

> In this case, the relevant portion of the Agreement states:
>
> It is further agreed by the parties that all rights, privileges and responsibilities under this agreement <u>shall expressly inure to the benefit of the manufacturer of the said mobile home</u> insofar as any claims may exist or thereafter arise against <u>the manufacturer</u>, including but not limited to, enforcement of warranties, whether express or implied. It is further acknowledged, agreed and stipulated to by the parties hereto that each of them <u>acknowledge the benefit of including any and all claims which might be asserted against the said manufacturer</u> in relation hereto in any arbitration proceeding contemplated hereby and, as such, each part shall, for purposes of judicial economy, decreased expenses and justice <u>expressly acquiesce in and bout to settle such claims against the manufacturer by arbitration</u>.

(Emphasis added). This contractual language is distinguishable from that in <u>Martin</u>, <u>Boyd</u>, and <u>Wilson</u>, in that it specifically references the manufacturer numerous times. The language is even more broad and specific than that in <u>Napier</u>, which the Alabama Supreme Court found sufficiently broad to include the non-signatory party, and that in <u>Isbell</u>. Here, the Agreement "expressly inure[s] to the benefit of the manufacturer of the said mobile home...." It appears sufficiently clear to this court that the signatory parties intended to include Fleetwood, the manufacturer of the mobile home at issue, as a third-party beneficiary to the Agreement. Thus, Fleetwood may compel arbitration of plaintiffs' claims against it.

**B. Arbitration and the Magnuson-Moss Warranty Act**

Plaintiffs contend that the Magnuson-Moss Warranty-Trade Commission Improvement Act (the "Magnuson-Moss Act"), 15 U.S.C. §§ 2301-2312, does not allow binding arbitration in

transactions such as the one at issue in this case, relying on <u>Wilson v. Waverlee Homes</u>, 954 F. Supp. 1530 (M.D. Ala. 1997), aff'd without opinion, 127 F.3d 40 (11th Cir. 1997); and <u>Southern Energy Homes, Inc. v. Lee</u>, 732 So.2d 994 (Ala. 1999).

Ronnie Smith's Home Center and Fleetwood assert that the Magnuson-Moss Act precludes binding arbitration only when the arbitration clause is included in a written warranty, distinguishing <u>Wilson</u> and <u>Boyd</u>, and relying on <u>Southern Energy Homes v. Lee</u>. Fleetwood also argues that <u>Wilson</u> is not binding precedent on this court, and that its reasoning is undercut by the Supreme Court's decision in <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985).

The parties do not dispute that the Federal Arbitration Act ("FAA") is relevant to this case. The FAA provides that a "written provision in ... a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or ... an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2. Furthermore, it is well settled that Congress, the Supreme Court, and the Eleventh Circuit favor arbitration where there is a question as to arbitratibility. See, e.g., <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 513 U.S. 265 (1995) (requiring broad interpretation of the FAA); <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1 (1983); <u>Montgomery Mailers' Union No. 127 v. The Advertiser Co.</u>, 827 F.2d 709, 712 (11th Cir. 1987) ("[I]n determining arbitrability there is a presumption in favor of arbitration.")(citing <u>AT&T Technologies</u>, 106 S.Ct. at 1419); <u>Seaboard Coast Line RR Co. v. Trailer Train Co.</u>, 690 F.2d 1343, 1348 (11th Cir. 1982); <u>A.G. Edwards & Sons, Inc. v. Clark</u>, 558 So.2d 358, 361 (Ala.

11

1990).

In <u>Wilson</u>, Chief Judge Thompson considered whether the court could enforce a binding arbitration agreement contained within installment sales and financing contracts where the plaintiff had made Magnuson-Moss Act claims. The court extensively discussed the act, its legislative history, related regulations, and regulatory history:

> The Act. The Magnuson-Moss Act indicates that Congress intended to preserve a judicial forum for consumers. The Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with an obligation under this title or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310(d). The Act recognizes only one exception to this entitlement. The Act provides for the establishment of "informal dispute settlement mechanisms," § 2310(a)(1), or "informal dispute settlement procedures." § 2310(a)(3). The Act states that "[o]ne or more warrantors may establish an informal dispute settlement procedure," § 2310(a)(3); and that this procedure must comply with certain "minimum requirements" to be promulgated by the Federal Trade Commission. § 2310(a)(2). The Act further makes clear, however, that such dispute resolution procedures or mechanisms are non-binding on the consumer and must be resorted to before the consumer may resort to a legal remedy, that is, to court. In other words, the procedures are a prerequisite, not a bar, to relief in court. The Act provides that, if a warrantor "establishes such a procedure," § 2310(a)(3)(A), and if the procedure meets the Commission's rules, § 2310(a)(3)(B), and if the warrantor "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy," § 2310(a)(3)(C), "then ... the consumer may not commence a civil action ... unless he initially resorts to such procedure." § 2310(a). Because the arbitration clauses contained in the installment sales and financing contracts between the plaintiffs and Hart's Mobile Home are binding, rather than non-binding, and are thus a bar to court relief, they conflict with the Magnuson-Moss Act and are unenforceable.
>
> The Act's Legislative History. A review of the legislative history of the Magnuson-Moss Act reinforces this conclusion. The remarks of Congressman Moss, one of the sponsors of the bill, are particularly illuminating:
>
>> "First, the bill provides the consumer with an economically feasible private right of action so that when a warrantor breaches his warranty or service contract obligations, the consumer can have effective redress.

> Reasonable attorney's fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring as a prerequisite to suit that the purchaser give the [warrantor] reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism...."

119 Cong.Rec. 972 (Jan. 12, 1973) (emphasis added). Congressman Moss therefore made clear that the informal dispute settlement mechanisms or procedures are a "prerequisite," not a bar, to suit in court. The House report on the bill makes this point even clearer. The report states that "An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." H.R.Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723. This history reflects that it was Congress's intent that any non-judicial dispute resolution procedures would be nonbinding, and consumers would always retain the right of final access to court.

The Regulations. The Federal Trade Commission has adopted a number of regulations pursuant to the Magnuson-Moss Act. These regulations mirror the Act's command that consumers should have full and final access to the courts for resolution of their disputes, with the exception that they could be required to pursue non-binding informal dispute resolution procedures. Under the regulations, a " 'mechanism' means an informal dispute settlement procedure which is incorporated into the terms of a written warranty." 16 C.F.R. § 703.1. The regulations, § 703.2, require that a mechanism comply with the "minimum requirements" prescribed by the Federal Trade Commission and contained in 16 C.F.R. §§ 703.3 through 703.8. However, in line with the notion that any mechanism established by a warrantor is merely a prerequisite, not a bar, to suit, the regulations further provide that "decisions of the mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j). Moreover, and to bring this point further home, the regulations add that "The mechanism shall inform the consumer ... that ... [i]f he or she is dissatisfied with its decision or warrantor's intended actions, or eventual performance, legal remedies, including use of small claims court, may be pursued." § 703.5(g).

History of the Regulations. If there is any remaining doubt that the Magnuson-Moss Act and the regulations promulgated pursuant to it do not allow for binding non-judicial dispute resolution of the type provided in the arbitration clause in the installment sales and financing contracts between the plaintiffs and Hart's Mobile Home, that doubt is fully dispelled by the history of the regulations. Upon adopting 16 C.F.R. § 703.5(j) (which states that decisions of the mechanism "shall not be legally binding"), the Federal Trade Commission responded to public comments from industry representatives in favor of binding arbitration by

remarking as follows:

> "Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow for this for two reasons. First, ... Congressional intent was that Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but nonjudicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers against warrantors, even if the Congressional report had not made clear, as it did, that it wished for such mechanisms to not be binding."

40 Fed.Reg. 60168, 60210 (1975). The Commission then goes on to state that "reference within the <u>written warranty</u> to any binding, non-judicial remedy is prohibited by the Rule and the Act." Id. at 60211. These comments make clear that binding arbitration, of the kind contained in the contracts between the plaintiffs and Hart's Mobile Home, is not permissible under the regulations promulgated by the Federal Trade Commission.

954 F. Supp. at 1537-1539 (footnotes omitted) (emphasis added).

Less than one year later, Chief Judge Thompson addressed a highly similar issue in <u>Boyd</u>. The court first clarified its holding in <u>Wilson</u>, stating that binding arbitration of only <u>written</u> warranty claims was precluded by the Magnuson-Moss Act. However, the court concluded "that Congress did <u>not</u> intend in the Magnuson-Moss Act to override the FAA's general mandate [in favor or arbitration] and preclude binding arbitration of <u>non</u>-written and <u>implied</u> warranty claims...." 981 F. Supp. at 1438 (citing <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 23 (1991) (claims arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621-634, held arbitrable); <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 480-483 (1989) (claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C.A. §

14

771(2), held arbitrable); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238-242 (1987) (claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and civil claims arising under the Racketeer Influenced and Corrupt Organizations Act (civil RICO), 18 U.S.C.A. §§ 1961-1968, held arbitrable); Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, 473 U.S. 614, 629 (1985) (claims arising under the Sherman Act, 15 U.S.C.A. §§ 1- 7, held arbitrable)) ("In each of these decisions, despite the presence in the statute at issue of a jurisdictional provision analogous to § 2310(d) of the Magnuson-Moss Act, the Court ruled that the FAA's mandate had not been overridden by Congress."). "...[C]ongressional concern with the disparate economic strength of consumers and warrantors was focused exclusively on written warranties.... Congress's intentions regarding non-written and implied warranties were far less ambitious." Id. at 1440-41.

In Southern Energy Homes, the Alabama Supreme Court held that, under the Magnuson-Moss Act, binding arbitration clauses are not enforceable against consumers where the arbitration clause at issue was contained within the manufacturer's written warranty. 732 So.2d 994. The Court distinguished both Wilson and Boyd, as those cases dealt with arbitration clauses in the sales contract, to which the manufacturer was not a party nor a third party beneficiary. This case is not on entirely on point as it deals with an arbitration clause within a written warranty.

In Rhode v. E & T Investments, Inc., District Court Judge DeMent held that the Magnuson-Moss Act precluded arbitration of plaintiff's written or express warranty claims, but not plaintiff's other claims. 6 F. Supp. 2d 1322, 1332 (M.D. Ala. 1998). The court rested its decision on Boyd and Wilson:

> The Magnuson-Moss Warranty-Trade Commission Improvement Act, 15

> U.S.C.A. § 2301-2312 ("Magnuson-Moss Warranty Act"), was enacted to "improve the adequacy of information available to consumers, [and] prevent deception." Waverlee Homes, 954 F.Supp. at 1537 (quoting 15 U.S.C.A. § 2302(a)). The Act delineates clear and comprehensive requirements regarding disclosures, duties and remedies associated with warranties on consumer products. Waverlee Homes, 954 F.Supp. at 1537.
>
> The FAA's mandate that agreements to arbitrate statutory claims must be enforced may be overridden by a statute evincing a contrary congressional mandate. McMahon, 482 U.S. at 226, 107 S.Ct. 2332. In Waverlee Homes, the court analyzed highly detailed and specific provisions of the Magnuson-Moss Act and concluded that Congress intended to preclude binding arbitration of written or express warranty claims arising under the Act. Waverlee Homes, 954 F.Supp. at 1537-1539. In Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997) (Thompson, J.), however, the court concluded that non- written and implied warranty claims arising under the Magnuson-Moss Act could be subject to arbitration. Boyd, 981 F.Supp. at 1440. Hence, in Boyd, the court ordered arbitration of non-written and implied warranty claims under the Magnuson-Moss Act, Boyd, 981 F.Supp. at 1440, even though it declined to do so for written warranties in Waverlee Homes. Waverlee Homes, 954 F.Supp. at 1537-39. The Eleventh Circuit recently affirmed the court's decision in Waverlee Homes. Wilson v. Waverlee Homes, 127 F.3d 40 (11th Cir.1997). Further, the court finds Boyd to be soundly reasoned and adopts and incorporates the court's conclusions herein. Thus, both Waverlee Homes and Boyd control the court's findings in the matter currently before it.

Id. at 1331. Based on this, the court granted the defendants' motion to compel arbitration with respect to all of the plaintiff's claims against it, except for plaintiff's claims for breach of written or express warranties.

This case is highly analogous to that in Rhode. Here, the binding arbitration clause is found in the Agreement, a sales contract, not within a written warranty. Based on the case and statutory law detailed above, defendants' motions to compel arbitration will be granted except as to any Magnuson-Moss Act claims plaintiff may have for breach of any written or express warranties.

16

### C. Minimum Guarantees under the Magnuson-Moss Act

Plaintiffs also assert that the Agreement is unenforceable as it fails to protect their statutory rights under the Magnuson-Moss Act, citing <u>Paladino v. Avnet Computer Technologies, Inc.</u>, 134 F.3d 1054 (11th Cir. 1998) ("When an arbitration clause has provisions that defeat the remedial purpose of [a] statute, ... the arbitration clause is not enforceable."); and <u>Randolph v. Green Tree Financial Corp.</u>, 178 F.3d 1149 (11th Cir. 1999); and because they are financially unable to pay the arbitration fees. Defendants counter that the cases cited by plaintiffs are distinguishable. Ronnie Smith's Home Center has further committed itself to pay the filing fee associated with the initiation of arbitration, along with any costs or fees which may be assessed against it by the arbitrator. <u>See</u> Affidavit of Jimmy Yates, General Manager of Ronnie Smith's Home Center, January 14, 2000.

In <u>Paladino,</u> the Eleventh Circuit held that the district court correctly refused to compel arbitration of the plaintiff's Title VII claim where the arbitration agreement provided that damages could be awarded for breach of contract only. The court noted that the arbitration clause "defeat[ed] the statute's remedial purposes because it insulate[d] [the defendant] from Title VII damages and equitable relief." 134 F.3d at 1062. The court held that such a clause impermissibly waived an employee's Title VII statutory rights. Additionally, the court noted that compelling a plaintiff to pay expensive arbitration costs and filing fees constituted "a legitimate basis for a conclusion that the [arbitration] clause does not comport with statutory policy." <u>Id.</u>

In <u>Randolph</u>, the Eleventh Circuit concluded "that the arbitration clause in [that] case [was] unenforceable, because it fail[ed] to provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights [would] not be undone by steep filing

17

fees, steep arbitrators' fees, or other high costs or arbitration." 178 F.3d at 1158. The arbitration clause in that case was silent regarding the payment of filing fees, the apportionment of the costs of arbitration, the potential case of financial hardship, or whether, if the consumer prevailed, she or he would subsequently be saddled with fees and costs in excess of any award.

In this case, the Agreement is silent as to the payment of filing fees, the apportionment of the costs of arbitration, the potential case of financial hardship, or whether, if the consumers prevailed, they would subsequently be saddled with fees and costs in excess of any award. The Agreement provides that the American Arbitration Association rules will govern the arbitration proceedings.[5] However, in this case, the plaintiffs will not be compelled to arbitrate their Magnuson-Moss Act claims regarding express or written warranties.

**D. Binding Arbitration, Credit, and the Equal Credit Opportunity Act**

Plaintiffs contend that, by being required to agree to binding arbitration as a condition for the extension of credit, they are impermissibly being required to waive their rights under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(3).[6] Plaintiffs contend that the contract at issue amounts to a contract of adhesion as it hinges the extension of credit upon their waiver of rights under the Consumer Credit Protection Act. Plaintiffs cite Caldwell v. KFC Corp., 958 F. Supp. 962 (D.N.J. 1997); and Owens v. Magee Fin. Serv., 476 F. Supp. 758 (E.D. La. 1979), in

---

[5] The AAA rules provide that the costs will be shared equally by the parties, unless the parties agree otherwise, or unless the arbitrator assess the costs against one party, which it is authorized to do. See AAA Commercial Arbitration Rule 49.

[6] This section states in pertinent part that "it shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction because the applicant has in good faith exercised any right under this chapter."

18

support of this contention. Defendants assert that plaintiffs are not foregoing any statutory rights, but have merely agreed to assert them in an arbitral forum rather than a judicial forum.

In Caldwell, a New Jersey district court judge held that the plaintiff could not have reasonably understood when signing an employment application that he was agreeing to arbitrate a future statutory civil rights claim for retaliatory termination. 958 F. Supp. at 975. The court based its decision primarily on the poor wording of the application, the fact that the attorneys for the defendant corporation could have easily been more clear and forthcoming in their choice of words, the limited education of the applicant, and the fact that the clause was included in an application for employment, rather than an employment contract. However, the court noted that "where circumstances surrounding an agreement suggest that both parties knowingly agreed to arbitrate a particular dispute, a court ought to compel arbitration and carry out their wishes." Id.

In Owens, an Eastern District of Louisiana district court judge held that a money lender violated the Equal Credit Opportunity Act by declining to extend credit to the plaintiff without her, at least believing, that she was required to settle and release her potential Truth in Lending Act claims. 476 F. Supp. at 768.

In this case, plaintiffs have not given up any rights or claims. The Agreement did not state that, as a condition of purchasing the mobile home, they must agree to settle and release their potential Magnuson-Moss Act claims. Rather, the Agreement attempted to move those claims, and all others, into an arbitral rather than a judicial forum. As the defendants have pointed out, the Supreme Court has stated that, "as a general rule, statutory claims are fully subject to binding arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 34-35 (1991). When a plaintiff agrees to arbitrate their potential statutory claims, the plaintiff "does

19

not forego the substantive rights afforded by the state," but "only submits to the resolution in an arbitral, rather than judicial forum." Id. at 26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). And as noted earlier in this opinion, many statutory claims are arbitrable.

### E. Policy Arguments Regarding Arbitration

Plaintiffs spend considerable time arguing that a federal policy favoring arbitration is unwise, that it hurts consumers, unfairly favors business, and that the Federal Arbitration Act has been interpreted far beyond its original intent. Plaintiffs are correct in that there is considerable controversy surrounding the soundness of arbitration as a federal policy. However, the stance of the Supreme Court and Congress is clear: Congress enacted the Federal Arbitration Act with a "liberal federal policy favoring arbitration agreements." Gilmer, 500 U.S. at 25.

### F. Conclusion

Based on the foregoing, defendants' motion to compel arbitration will be granted, except as to plaintiffs' Magnuson-Moss Act claims regarding written or express warranties against both defendants. There may be an issue as to whether the defendant Ronnie Smith's Home Center gave any written or express warranties. The parties will address that issue with supplemental briefs within ten days. Fifteen days from date the defendants will submit and serve a proposed order consistent with this opinion. Plaintiffs will have seven days to reply.

This 30 day of March, 2000.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**